## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| RITA HOPKINS, individually and on behalf of all others similarly situated, )<br><br>        Plaintiff, )<br><br>v. )<br><br>WORLD ACCEPTANCE CORPORATION, WORLD FINANCE CORPORATION OF GEORGIA, FORTEGRA FINANCIAL CORPORATION, LIFE OF THE SOUTH CORPORATION, INSURANCE COMPANY OF THE SOUTH, LYNDON SOUTHERN INSURANCE COMPANY, )<br><br>        Defendants. )<br>_____ ) | No.1:10-cv-03429-SCJ |

## ORDER

THIS MATTER is before the Court on Defendants' Motions to Compel Arbitration and Stay Action [Doc. Nos. 20, 21], and Plaintiff's Motion for Continuance to Respond to Defendants' Motions to Compel Arbitration and Stay Action [Doc. No. 28]. For the reasons given below, Defendants' Motions are **GRANTED** and Plaintiff's Motion is **DENIED**.

## BACKGROUND

Plaintiff Rita Hopkins obtained a series of consumer loans from Defendant World Finance Corporation of Georgia ("World Finance-GA").[1] (Am. Compl. [Doc. No. 9] ¶¶ 18, 25, 32.)  For each loan transaction, Plaintiff and World Finance-GA executed a loan agreement (the "Loan Agreement") and an arbitration agreement (the "Arbitration Agreement").  (Id. [Doc Nos. 9-1 - 9-5] at Exs. A-E.)  The Loan Agreement charges Plaintiff a fee for non-recording insurance, also known as non-filing insurance (the "NFI").  (Id. [Doc Nos. 9 - 9-5] at ¶¶ 18-85, Exs. A-E.)  Plaintiff alleges that the NFI fee resulted in, among other things, breach of contract, unjust enrichment, conversion, violation of Georgia RICO, violation of Georgia's Deceptive Trade Practices Act, and violation of the Truth in Lending Act ("TILA").

World Finance-GA purchased NFI from companies such as Defendant Insurance Company of the South.[2]  (Id. at ¶¶ 63-65; Decl. Mark C. Roland [Doc. No. 20-2] ¶ 8.)  Under the NFI, World Finance-GA is ostensibly the insured and Defendant Insurance Company of the South ("ICOS") is the insurer; Plaintiff is not

---

[1]Plaintiff alleges that Defendant World Finance-GA is a wholly owned subsidiary of Defendant World Acceptance Corporation (collectively, the "Loan Defendants"). (Am. Compl. [Doc. No. 9] ¶ 16.)

[2] Plaintiff alleges that Defendant Insurance Company of the South and Defendant Lyndon Southern Insurance Company are wholly owned subsidiaries or affiliates of Defendant Fortegra Financial Corporation, f/k/a Life of the South Corporation (collectively, the "Insurance Defendants").  (Id. at ¶ 60.)

indemnified by the NFI.  (*See* Am. Compl. [Doc No. 9] ¶¶ 70-74; Decl. Mark C. Roland [Doc. No. 20-2] ¶ 8.)

The Loan Agreement contains an "**ARBITRATION AGREEMENT**" provision, which states

> "BORROWER AND LENDER DO AGREE TO AN ARBITRATION (EXCEPT AS LIMITED IN THE ARBITRATION AGREEMENT) FOR THE SETTLEMENT OF ANY CONTROVERSIES BETWEEN THEM. THE TERMS OF THE ARBITRATION AGREEMENT ARE SET FORTH IN A SEPARATE AGREEMENT. THE PARTIES HEREBY ACKNOWLEDGE THAT THE AGREEMENT OF THE BORROWER TO ENTER INTO THE SEPARATE ARBITRATION AGREEMENT IS A MATERIAL INDUCEMENT TO THE LENDER'S ENTERING INTO THIS AGREEMENT WITH THE BORROWER.

(Am. Compl. [Doc Nos. 9-1 - 9-3] Exs. A-C (emphasis in original).)

The separate Arbitration Agreement broadly covers all claims filed by a plaintiff:

> ALL DISPUTES, CONTROVERSIES OR CLAIMS OF ANY KIND AND NATURE BETWEEN LENDER AND BORROWER ARISING OUT OF OR IN CONNECTION WITH THE LOAN AGREEMENT, OR ARISING OUT OF ANY TRANSACTION OR RELATIONSHIP BETWEEN LENDER AND BORROWER OR ARISING OUT OF ANY PRIOR OR FUTURE DEALINGS BETWEEN LENDER AND BORROWER, SHALL, AT THE REQUEST OF EITHER PARTY, BE SUBMITTED TO SINGLE ARBITRATION AND SETTLED BY SINGLE ARBITRATION IN ACCORDANCE WITH THE UNITED STATES ARBITRATION ACT, THE EXPEDITED PROCEDURES OF THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE "ARBITRATION RULES OF THE AAA"), AND THIS AGREEMENT. . . . SUCH ARBITRATION SHALL BE CONDUCTED BY A PANEL OF ONE (1) ARBITRATOR

SELECTED IN ACCORDANCE WITH THE ARBITRATION RULES OF
THE AAA.

(*Id.* [Doc. Nos. 9-4 - 9-5] at Exs. D-E ¶ 1 (emphasis in original).)

The Arbitration Agreement also describes the ramifications of the agreement,

including a class action waiver:

> LENDER AND BORROWER UNDERSTAND AND AGREE (I) THAT
> EACH OF THEM IS WAIVING RIGHTS TO SEEK REMEDIES IN
> COURT, INCLUDING THE RIGHT TO A JURY TRIAL; (II) THAT
> EACH OF THEM IS WAIVING THE RIGHT TO PURSUE A CLAIM AS
> A CLASS ACTION OR BY CLASS OR MULTI-PARTY ARBITRATION;
> (III) THAT PRE-ARBITRATION DISCOVERY IN AN ARBITRATION
> PROCEEDING IS GENERALLY MORE LIMITED THAN AND
> DIFFERENT FROM A COURT PROCEEDING; (IV) THAT THE
> ARBITRATOR'S AWARD IS NOT REQUIRED TO INCLUDE
> FACTUAL FINDINGS OR LEGAL REASONING; AND (V) THAT
> EITHER PARTY'S RIGHT TO APPEAL OR SEEK MODIFICATION OF
> RULINGS BY THE ARBITRATOR IS STRICTLY LIMITED.

(*Id.* at ¶ 9 (emphasis in original).)  The agreement also defines arbitration:

> Arbitration is a method of resolving disputes between parties without
> filing a lawsuit in court. The Arbitrator's decision under this
> Agreement is final and binding on Borrower and Lender.  The
> Arbitrator does not have to give any written reasons for the decision.
> Borrower is limiting Its right to bring a lawsuit in court, including the
> right to a jury trial.

(*Id.* at p. 2.)

The parties' final Arbitration Agreement contains the following opt-out

provision, entitled "**How to Reject this Agreement to Arbitrate**":

You may reject this agreement to arbitrate by sending to us at the

4

address that follows a notice ("Rejection Notice") that we receive within fifteen (15) days of the date of this agreement to arbitrate. Your Rejection Notice must include your full name, your current address, your current telephone number, the loan account number for the loan that you obtained contemporaneously with this agreement to arbitrate, your full social security number for identity verification purposes, and be signed by you. . . . Any Rejection Notice will apply only to this arbitration agreement and will not apply to any prior or future arbitration agreements that you may enter into with us. The Rejection Notice must be mailed with return receipt requested to: Rejection Notice Department. . . . In the event of any dispute concerning whether you have provided a timely notice of rejection, you must produce the signed receipt for mailing the Rejection Notice. In the absence of the signed receipt, our received date stamp on the Rejection Notice shall be conclusive evidence of the date of receipt. These instructions constitute the only method that you can use to exercise your right to reject this arbitration agreement.

(*Id.* at p. 2 (emphasis in original).)

Defendants seek to compel Plaintiff to arbitrate her claims. Plaintiff, in turn, asks for a continuance to respond to Defendants' motions to compel, thus allowing her to conduct discovery into the enforceability of the Arbitration Agreement.

## DISCUSSION

### I.   Defendants' Motions to Compel Arbitration

#### A.   The Federal Arbitration Act Governs This Dispute

The FAA mandates that

A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the

5

revocation of any contract.

9 U.S.C. § 2.  The "involving commerce" provision in 9 U.S.C. § 2 and the "affecting commerce" provision of the Commerce Clause are functional equivalents; they are "words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

Here, the Arbitration Agreement provides that "[t]his Agreement and the Loan Agreement are made in interstate commerce." (Am. Compl. [Doc. No. 9-4 - 9-5] Exs. D-E ¶ 5.)  The presence of interstate commerce is further reflected by the citizenship of the defendants to this action: World Finance-GA is a Georgia Company and World Acceptance is a South Carolina corporation.  Indeed, both World Finance-GA and World Acceptance maintain a business presence in South Carolina.  Furthermore, Plaintiff's loan transactions involved the interstate transmission of data and the disbursement of funds. (*See* Roland Decl. [Doc. No. 20-2] ¶ 7.); *see also Jenkins v. First Am. Cash Advance of Georgia*, 400 F.3d 868, 874–75 (11th Cir. 2005) (holding that processing loans across state lines constituted "interstate commerce" within the meaning of 9 U.S.C. § 2).  Indeed, Plaintiff admits that "Defendants' activities occur in or have an impact on interstate commerce." (Am. Compl. [Doc. No. 9] ¶ 223.)

And as will be discussed below, the Arbitration Agreement encompasses

Plaintiff's claims, and there are no grounds for revoking the agreement. Therefore, the FAA requires this Court to enforce the agreement according to its terms. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

### B.   The Arbitration Agreement Requires Arbitration of Plaintiff's Claims

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In light of this policy, the Supreme Court mandates the liberal application of arbitration clauses:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Id.* at 24–25.

Against the backdrop of this policy favoring arbitration, a court uses a two-step process to determine reach of an arbitration agreement. First, a court must ascertain if the agreement's terms reach the plaintiff's claims. Second, a court must decide if any "legal constraints external to the parties' agreement" prevent application of the agreement to require arbitration of Plaintiff's claims. *Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

### C.   The Terms of the Arbitration Agreement Apply to Plaintiff's

**Claims**

The Arbitration Agreement states that it governs "[a]ll controversies or claims of any kind and nature between [World Finance-GA and its affiliates] and [Plaintiff] arising out of or in connection with the loan agreement, or arising out of any transaction or relationship between [World Finance-GA and its affiliates] and [Plaintiff]." (Am. Compl. [Doc. No. 9-5] Ex. E ¶ 1.) Plaintiff's claims arise out of the loan agreements and transactions with World Finance-GA; thus, they are subject to the Arbitration Agreement.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."); *Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003) (holding that federal RICO claims should have been compelled to arbitration*); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342, 344 (11th Cir. 1984) (noting that the FAA reaches claims, whether sounding in contract or in tort).

### D.    No External Legal Constraints Prevent Application of the Arbitration Agreement

#### 1.    O.C.G.A. § 9-9-2(c)(3) Does Not Preclude Arbitration

Plaintiff argues that O.C.G.A. § 9-9-2(c)(3) prevents this Court from compelling arbitration.  Section § 9-9-2(c)(3) bars enforcement of arbitration agreements in "[a]ny contract of insurance, as defined in paragraph (1) of Code

Section 33-1-2." Plaintiff's claims, however, are not based on an insurance contract.

Under O.C.G.A. § 33-1-2, "'insurance' means a contract which is an integral part of a plan for distributing individual losses whereby one undertakes to indemnify another or to pay a specified amount or benefits upon determinable contingencies." While § 33-1-2 provides some guidance, there is nevertheless wiggle room as to the meaning of the clause "an integral part of a plan for distributing losses." For example, if the Plaintiff had not paid the NFI, World Finance-GA would not have obtained the NFI. Does that make Plaintiff an integral part a plan to distribute individual losses?

The more instructive part of § 33-1-2 is *who* the statute contemplates will be the parties to the "insurance"; the statue speaks of a contract whereby one party seeks to indemnify another. In this case, the insurance in question is the NFI through which the Insurance Company of the South sought to indemnify World Finance-GA; these two defendants play the indemnity roles contemplated by § 33-1-2. Plaintiff has no role in the indemnification scheme as defined by § 33-1-2: she was neither indemnifier nor indemnified. Therefore, the Loan Agreement and Arbitration Agreement are not insurance contracts for the purposes of § 33-1-2 and § 9-9-2(c)(3). Indeed, Plaintiff cites a series of cases buttressing this point.

When Plaintiff argues that the Loan Agreement is an insurance contract, she

relies on cases in which the plaintiffs and defendants had a relationship of indemnifier and indemnified. That is to say, the parties in those cases fit into the roles contemplated by O.C.G.A. § 33-1-2: one party insured the other. *See McKnight v. Chicago Title Ins. Co.*, 358 F.3d 854, 856 (11th Cir. 2004) ("Plaintiffs below . . . contracted with Defendant, Chicago Title Insurance Company, for title insurance."); *Lawson v. Life of the S. Ins. Co.*, No. 4:06-CV- 42, 2010 WL 1416551 , at *1 (M.D. Ga. Mar. 31, 2010) (refusing to compel arbitration when the plaintiff sued to obtain a refund upon insurance provided to the plaintiff by the defendant"); *In re TFI Enters., Inc.*, No. 05-40683, 2008 WL 961213, at *1 (Bankr. M.D. Ga. Apr. 9, 2008) ("Defendant provided debtor with workers' compensation, employers' liability, automobile liability, and general liability insurance."); *Love v. Money Tree, Inc.*, 279 Ga. 476, 476–77 (2005) (prohibiting enforcement of an arbitration agreement when defendants obtained insurance from the plaintiff); *Cont'l Ins. Co. v. Equity*, 255 Ga. App. 445, 445 (2002 ) (refusing to compel arbitration when plaintiff sued its insurer).

Here, because Plaintiff and Defendants are not the insured and insurer under the NFI, this is not an insurance contract for the purposes of O.C.G.A. § 9-9-2(c)(3). Thus O.C.G.A. § 9-9-2(c)(3) cannot serve as a bar to arbitration.

## 2. The Arbitration Agreement Is Not Unconscionable

A party seeking to establish that a contract is unconscionable must show that the contract was either procedurally or substantively unconscionable. "Procedural

unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves." *NEC Techs. v. Nelson*, 267 Ga. 390, 392 (1996).

### a.   The Arbitration Agreement is Not Procedurally Unconscionable

A contract is procedurally unconscionable when "one of the parties takes a fraudulent advantage of another." *Results Oriented, Inc. v. Crawford*, 245 Ga. App. 432, 441 (2000) (internal quotation marks omitted). "A non-inclusive list of some factors courts have considered in determining whether a contract is procedurally unconscionable includes the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *NEC Techs.*, 267 Ga. at 392.

While many of the above listed factors tether unconscionability to each parties bargaining position and power, a contract is not necessarily unconscionable when one party is economically disadvantaged or lacks sophistication. *Saturna v. Bickley Constr. Co.*, 252 Ga. App. 140, 142 (2001). Moreover, a contract of adhesion requiring arbitration is not *per se* unconscionable or unenforceable, and the concerns attending to contracts of adhesion can be addressed by highlighting important terms. *AT&T Mobility LLC v. Concepcion Et Ux.*, No. 09–893, __ S. Ct. __, *12 n. 6 (April 27, 2011);

*see also Mathis v. Orkin Exterminating Co.*, 254 Ga. App. 335, 337 (2002). Finally, when a party challenges an arbitration agreement that contains an opt-out provision and fails to opt-out , her unconscionability argument is diluted because the provision was not offered on a take-it-or-leave-it basis. *Honig v. Comcast of Ga. I, LLC*, 537 F. Supp. 2d 1277, 1289 (N.D. Ga. 2008).

Here, Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because of (1) World Finance-GA's sophistication and power in contrast to Plaintiff's lack of business acumen and meaningful choice, and (2) the adhesive nature of the arbitration agreement. The factors pointed to by Plaintiff are just several of the many non-exhaustive factors set forth in *NEC Techs.* The Complaint and record are in fact devoid of information that could fill-in such factors as Plaintiff's age, education, intelligence, business acumen, and experience. This information was, of course, within Plaintiff's knowledge, and the Court is left wondering why she did not allege facts or submit an affidavit that might have helped her case. The Court will thus focus on the information before it, such as, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, the alleged absence of a meaningful choice, and World Finance-GA's alleged superior business acumen.

Turning first to the language of the Arbitration Agreement, the Court finds that the two page Arbitration Agreement is clear and comprehensible. The

agreement is titled, "**AGREEMENT TO SETTLE DISPUTES BY ARBITRATION**." (Am. Compl. [Doc. Nos. 9-4 - 9-5] Exs. D-E (emphasis in original).)  Directly below the title, Plaintiff was instructed to "**READ THIS ARBITRATION AGREEMENT CAREFULLY, IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION**."   (*Id.* (emphasis in original).)   The Arbitration Agreement next explains, in all caps, that either party can submit any claim to binding arbitration, and that the borrower waives her right to a class action. The agreement then defines arbitration.  And the last Arbitration Agreement, signed in May 2010, has an opt-out provision, which is bolded.  Thus the terms the agreement were clear.

As will be discussed below, the terms of the Arbitration Agreement are not oppressive.  They are however designed to hem a borrower into arbitration.

Regarding the relative power, knowledge, and experience of the parties, Plaintiff alleges that World Finance-GA has superior business acumen and is generally in a grossly superior financial and bargaining position.  As *Saturna* points out, such disparities do not, *per se*, render a contract unconscionable.  In this case, we can assume World Finance-GA is sophisticated and possess superior business acumen, but Plaintiff has provided no information about her own qualities.  In light of the realities of our market place, in which sophisticated companies must

regularly contract with everyday consumers,[3] the apparent disparities are not alarming, and do not render the agreement unconscionable.

Plaintiff also failed to introduce evidence as to whether she had a meaningful choice to obtain a loan without having to enter into an arbitration agreement.  Again, this type of information is not necessarily in Defendants' hands.  Nevertheless, even if Plaintiff presented evidence that every consumer credit agreement in the marketplace contained an arbitration clause, Plaintiff's claims is "diluted" because the final Arbitration Agreement gave her a chance to opt-out.  *See Honig*, 537 F. Supp. 2d at 1289.

Finally, the Arbitration Agreement is a contract of adhesion, but this is not determinative.  *Mathis*, 254 Ga. App. at 337.  The Supreme Court notes that large companies must regularly contract with consumers, and contracts of adhesion fit this purpose.  *AT&T Mobility*, No. 09–893 at *12.  Requiring consumer credit companies to negotiate the terms of every individual loan agreement would only increase transaction costs, which would likely be passed on to economically disadvantaged consumers, or possibly end the consumer credit industry.

Based on the above factors, the Arbitration Agreement is not procedurally unconscionable.  The terms of the agreement are clear, and Plaintiff ultimately could

---

[3] "[T]he times in which consumer contracts were anything other than adhesive are long past." *AT&T Mobility*, No. 09–893 at *12.

have opted-out. There are obvious disparities between the parties, and Plaintiff had little choice beyond "take-it or leave-it"; but the legislature allows the consumer credit marketplace to exist, and the disparities and contracts of adhesion are essentially endemic.

### b.   The Arbitration Agreement is Not Substantively Unconscionable

Regarding substantive unconscionability, "courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *NEC Techs.*, 267 Ga. at 392.

### (1)   The Class Action Waiver is Not Substantively Unconscionable

The legal backdrop has changed since the parties argued about the unconscionability of the class action waiver in the Arbitration Agreement. In April of 2011, the Supreme Court decided that the FAA preempts California's "Discover Bank" rule, which rule provided that class action waivers in arbitration agreements were often unconscionable. *AT&T Mobility LLC v. Concepcion Et Ux.*, No. 09–893, __ S. Ct. __, *12-13 (April 27, 2011). Under the Court's new law, and previous Eleventh Circuit case law, the class action waiver in this case is not unconscionable.

Pretermitting whether *AT&T Mobility* is distinguishable on its facts, the policy of the United States is clear: "The 'principal purpose' of the FAA is to 'ensur[e]

that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility*, No. 09–893 at *9-10 (quoting *Volt Info. Scis., Inc.*, 489 U. S. at 478 (1989)). And "[t]he point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute." *AT&T Mobility*, No. 09–893 at *10. With these concerns in mind, the Court held that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 9. The Court's ruling is quite broad, and allows for the enforcement of class action waivers in arbitration agreements, even when (1) the arbitration agreement is a contract of adhesion, (2) the plaintiff can only recover a small amount, and (3) the plaintiff alleges that the defendant had schemed to cheat its customers. *Id.* at *11-12.

It is worth noting that *AT&T Mobility* does not appear to forestall all arguments that a given class waiver in an arbitration agreement is unconscionable. The Court was concerned that the *Discovery Bank* rule relied "on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." *Id.* at *7  The implication is that a party can still challenge a class waiver as unconscionable if the waiver is, for example, unintelligible. *See id.* at *12 n.6 ("Of course States remain free to take steps addressing the concerns that attend contracts of adhesion—for example, requiring class-action-waiver provisions in adhesive agreements to be highlighted. Such steps cannot, however, conflict with

the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms.").

Here, under *AT&T Mobility's* broad rule, the class action waiver is not unconscionable. Or more to the point, if this Court held that the class action waiver was unconscionable, such a holding would likely conflict with the FAA or frustrate its purpose. *AT&T Mobility* probably would allow Plaintiff to argue that the class waiver was somehow unclear and therefore unconscionable, but such an argument would have been futile. The Arbitration Agreement clearly states that "[THE LENDER AND BORROWER ARE] WAIVING THE RIGHT TO PURSUE A CLAIMS AS A CLASS ACTION OR BY CLASS OR MULTI-PARTY ARBITRATION." (Am. Compl. [Doc. Nos. 9-4 - 9-5] Exs. D-E (emphasis in original).)

Even if *AT&T Mobility* does not require enforcement of class waivers in arbitration agreements, the waiver here is valid under preexisting Eleventh Circuit law. The Eleventh Circuit enforces class action waivers in arbitration agreements when at least some of the plaintiff's claims provide "for the recovery of attorneys' fees and/or expert costs should the plaintiff prevail." *Dale v. Comcast Corp.*, 478 F.3d 1216 (11th Cir. 2007); *see also Cappuccitti v. DirectTV, Inc.*, 623 F.3d 1118, 1125–27 (11th Cir. 2010); *Jenkins v. First Am. Cash Advance of Ga.*, 400 F.3d 868, 878 (11th Cir. 2005) (explaining that a class waiver does not, as a matter of law, unduly prevent a plaintiff from pursuing his claim, particularly when a plaintiff can recover attorneys'

fees); *Honig*, 537 F. Supp. 2d at 1287 (noting that where a fee-shifting statute applies, "there was no danger that the defendant's alleged illegal conduct would go unchecked.")

Here, Plaintiff asserts at least three causes of action that require an award of attorneys' fees if she prevails. (Am. Compl. [Doc. No. 9] ¶¶ 170–82 (mandatory attorney's fees and treble damages provided by O.C.G.A. § 16-14-6(c)); *id.* at ¶¶ 203–27 (mandatory attorney's fees and treble damages provided by 18 U.S.C. § 1964(c)); *id.* at ¶¶ 190–202 (mandatory attorney's fees provided by 15 U.S.C. § 1640(a)(3)).) The Arbitration Agreement itself expressly allows for the recovery of "attorney, expert and witness fees and expenses" as "required by applicable law." (*Id.* [Doc. Nos. 9-4 - 9-5] at Exs. D-E ¶ 7.) Because, *inter alia*, Plaintiff can recover attorneys' fees if she prevails, the class waiver is enforceable.

> **(2)   The Remedies and Procedures Offered by the Arbitration Agreement Do Not Render It Substantively Unconscionable**

Plaintiff makes a series of arguments that the Arbitration Agreement is substantively unconscionable because it unduly limits her rights, remedies, and ability to conduct discovery. Arbitration by its very nature limits a party's rights and remedies, and such limitations do not necessarily render an arbitration agreement unconscionable.

First, the unilateral remedies in the Arbitration Agreement do not unfairly restrict Plaintiff's access to the courts.   Plaintiff claims the agreement is unconscionable because it allows World Finace-GA to accelerate her debt and use remedies under the Uniform Commercial Code.   Plaintiff does not, however, cite any authority for this contention.   Indeed, an arbitration clause is not necessarily unconscionable because its remedies are unilateral.   *Saturna*, 252 Ga. App. at 142 ("Furthermore, we do not find that the contract is unconscionable because it provides additional methods of redress to [the party seeking to compel arbitration].").

Plaintiff next contends that the limited scope of discovery in arbitration proceedings inhibits her ability to pursue her claims.   In this respect, Plaintiff attacks the very foundations of arbitration as a method for dispute resolution, and both the Supreme Court and the Eleventh Circuit reject this species of argument.   *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005).   Discovery limitations promote the goals of the FAA, and such limitations are rarely grounds for avoiding an arbitration agreement.   *See Caley*, 428 F.3d at 1378.   Indeed, "by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer*, 500 U.S. at 20 (internal quotation marks omitted).

Here, the Arbitration Agreement adopts the discovery limitations set forth in the Arbitration Rules of the AAA, and allows for a limited number of depositions based upon mutual agreement of the parties or the arbitrator's determination. Plaintiff cites only one case for the proposition that such discovery limitations are substantively unconscionable, *Walker v. Ryan's Steakhouse, Inc.*, 400 F.3d 370 (6th Cir. 2005). In *Walker*, the defendant's arbitral pool was biased, and the parties were allowed only one deposition by right, and additional depositions at the discretion of the ostensibly biased arbitrators. *Id.* at 387. The unfairness to the plaintiff in *Walker* stemmed from "the limited discovery, controlled by a potentially biased arbitration panel." *Id.* (internal citation omitted). Unlike *Walker*, the Plaintiff here has neither alleged nor argued that the Arbitration Agreement provides for a biased arbitral pool. Given the goals of the FAA, and the case law, the discovery limitations do not render the Arbitration Agreement substantively unconscionable.

Finally, Plaintiff argues that the opt-out provision contributes to the substantive unconscionability of the Arbitration Agreement. Plaintiff's contention lacks authority. In every case Plaintiff cites to support her argument, the courts simply held that an arbitration agreement could be *procedurally* unconscionable despite the presence of an opt-out provision; none of the cases addressed the relationship between an opt-out provision and substantive unconscionability. *See Clerk v. First Bank of Del.*, 735 F. Supp. 2d 170, 183 (E.D. Pa. 2010) (holding that an

opt-out clause does not automatically spare the arbitration provision from a finding of procedural unconscionability); *Gentry v. Sup. Ct.*, 42 Cal. 4th 443, 466-67 (2007) (holding that an arbitration provision was procedurally unconscionable despite a 30-day opt-out term ); *Duran v. Discovery Bank*, No. B203338, 2009 WL 1709569, *7 (Cal. Ct. App. June 19, 2009) (ruling that an arbitration provision in a consumer credit card agreement was *procedurally* unconscionable despite containing a 30-day opt-out clause).

Looking to the limitations in the Arbitration Agreement as a whole, they  do not render the agreement substantively unconscionable.

### E.    The Claims Against the Insurance Defendants Are Also Subject to Arbitration

Plaintiff concedes that if the claims against the Loan Defendants are compelled to arbitration, so too should the claims against the Insurance Defendants. (Pl. Resp. [Doc. No. 29] p. 36.)  All of Plaintiff's claims against all Defendants are thus compelled to arbitration.

## II.    Plaintiff's Motion for Continuance

### A.    The Court Will Not Hear Plaintiff's Declaratory Judgment Claims

Plaintiff asks this Court to exercise its discretion to adjudicate her declaratory judgment claims.  It is, however, well established that declaratory judgment actions can be sent to arbitration.  *See, e.g.*, *Weiner v. Tootsie Roll Indus., Inc.*, 412 Fed. Appx.

224, 225 (11th Cir. 2011) (affirming district court order compelling arbitration of a declaratory judgment claim). Plaintiff's declaratory judgment claim, along with her other claims, will be arbitrated according to the parties' agreement.

### B.     Plaintiff Is Not Entitled to Further Discovery

Plaintiff seeks a continuance to conduct discovery into whether the NFI is illegal, and whether the Arbitration Agreement is unconscionable. As is clear from the Court's discussion above, discovery will not be necessary.

In this case, there is a tension between Congress' clear intent in enacting the FAA, which was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly as quickly and easily as possible," and Plaintiff's push to conduct fairly broad discovery. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22. Plaintiff argues that she has a right to discovery because (1) under Georgia law, when a party claims a contract is unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination," O.C.G.A. § 11-2-302(2); and (2) motions to compel arbitration are decided under the same standard as a motion for summary judgment, and Plaintiff cannot oppose arbitration unless she can discover additional facts, *see PCH Mut. Ins. Co., Inc. v. Cas. & Sur., Inc.*, 596 F. Supp. 2d 67, 74-75 (D.D.C. 2008). Plaintiff assumes she will be robbed of her reasonable

right to present evidence unless this Court allows for discovery.

Plaintiff seeks fairly broad discovery, including information that his purportedly relevant to (a) the legality of the NFI, (b) the relationship between the Defendants, (c) whether the Loan Agreement is an insurance contract, and (d) whether the Arbitration Agreement is unconscionable.

The scope of discovery is left to a district court's discretion, and in this case, the Court sees no need for additional discovery.[4]  *See Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1506 (11th Cir. 1985).  The issue before the Court is limited: simply put, the issue is whether the Court must compel arbitration.  When a court considers arbitrability, it "is not to rule on the potential merits of the underlying claims." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Neither the legality of the NFI nor the relationship between the Defendants are relevant to whether this Court must compel arbitration; both relate to the merits of Plaintiff's claims and are thus outside the scope of the Court's current inquiry. Therefore, the Court will not allow discovery into these issues.

Moreover, the information in the record is sufficient to determine whether the

---

[4] Months have passed since the parties submitted their motions and briefs, and in that time, the parties have been conducting discovery.  Indeed, Defendants have provided the Court with a list of documents and information they intended to give to Plaintiff last February. Plaintiff has not filed a motion to compel in which she claims that Defendants failed to deliver, nor has Plaintiff filed a motion drawing the Court's attention to potentially relevant facts that she presumably obtained from Defendants.

Loan Agreement is an insurance contract.  While Plaintiff states that she needs discovery into whether the Loan Agreement is an insurance contract, she cannot identify any relevant information she might hope to receive through discovery. Plaintiff argues that the relationship among the Defendants is relevant to whether the Loan Agreement is an insurance contract.  But as the Court has made clear, the nature of the Loan Agreement is foremost contingent upon whether Plaintiff and Defendants are in the position of indemnified and indemnifier; and that relationship is apparent on the face of the Loan Agreement.  *See* O.C.G.A. § 33-1-2*; Munson v. Strategis Asset Valuation and Mgmt.*, Inc., 363 F. Supp. 2d 1377, 1381 (N.D. Ga. 2005) ("[T]he court should first look to the four corners of the document to determine the intention of the parties from the language employed.").  Because there are no issues of material fact as to whether the Loan Agreement is an insurance contract, it would be futile to allow discovery into this subject.

Finally, no discovery is needed into whether the Arbitration Agreement is unconscionable.   First, it is questionable whether this Court is bound by O.C.G.A. § 11-2-302(2) to allow further discovery.  Under O.C.G.A. § 11-2-302(2), when a party claims a contract is unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."  There is neither federal nor state case law on how O.C.G.A. § 11-2-302(2) operates in the context a motion to compel

arbitration. The statute only speaks of a reasonable opportunity to present evidence, and not of discovery; and this Court is ever mindful of the FAA's goals of promoting efficiency and curbing unnecessary discovery. And to the extent the statute could be interpreted to require discovery, it treads upon the province of the Federal Rules of Civil Procedure, and raises serious concerns under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Notwithstanding the thorny issues regarding the goals of arbitration and *Erie*, Plaintiff already had a reasonable opportunity to present evidence; and the record before the Court is sufficient to support this Order to compel arbitration.

Plaintiff argues that she needs discovery into (i) the commercial background for and circumstances surrounding the parties' agreements, and (ii) the costs of arbitration. First, the circumstances surrounding the transactions and the parties' backgrounds are well established, and to the extent they are not, the fault lies with Plaintiff. For the purposes of this Order, the Court already assumes that the Loan Defendants are sophisticated entities, possessed of superior business acumen, and occupying far more powerful positions than Plaintiff. Plaintiff drives this point home by attaching World Acceptance Corporation's 2010 form 10-K, which shows the company's business practices and wealth. (Pl.'s Brief [Doc. No. 28-3] Ex. Q.) Plaintiff, however, failed to allege, declare, or attest as to any information about her potentially relevant characteristics, such as age, education, intelligence, business

acumen and experience.  Plaintiff also failed to allege any information about the actual events surrounding the transactions, which information was known to Plaintiff.  The Court will not delay arbitration so Plaintiff can present information that has been at her fingertips *ab initio*.

Further, Plaintiff failed to allege, attest to, or declare any facts about her lack of meaningful choice.  If she wished obtain facts through discovery, she could have surveyed the marketplace in the three months that passed between filing her Complaint and her Motion to Continue, the subsequent month before she filed her Reply, and the many months that have since elapsed.  *See Bess v. Payday Now*, 294 F.3d 1298, 1308 (11th Cir. 2002) (applying Alabama law and faulting plaintiff for failing to show "how many lenders in [plaintiff's] geographic area . . . utilize arbitration agreements in deferred payment transactions. . . . [Plaintiff] simply has not established that the deferred payment transaction market was virtually closed to borrowers not agreeing to arbitrate").  Even if Plaintiff found that every consumer loan company required an arbitration agreement, she cites no authority that this factor would have tipped the agreement into the realm of unconscionability; particularly when Plaintiff could have opted-out of the arbitration agreement.  *See Honig*, 537 F. Supp. 2d at 1289.

Second, Plaintiff likewise needed little to no discovery from Defendants to analyze the cost of arbitration.  Like the plaintiff in *Ting v. AT & T*, 182 F. Supp. 2d

902 (N.D. Cal. 2002), Plaintiff could have obtained substantial evidence from the AAA about the costs of arbitration.[5]  And Plaintiff could have introduced evidence about here own ability to pay arbitration costs, which she did not do.

Given the paucity of relevant information that Plaintiff could have discovered from Defendants, and the need to deal with arbitrability issues as soon as practicable, the Court will not grant a continuance to allow for the requested discovery.

## CONCLUSION

For the reasons given above, Defendants' Motions to Compel Arbitration and Stay Action [Doc. Nos. 20, 21] are **GRANTED,** and Plaintiff's Motion to for Continuance to Respond to Defendants' Motions to Compel Arbitration and Stay Action [Doc. No. 28] is **DENIED**.

**IT IS SO ORDERED**, this 29th day of June, 2011.

s/Steve C. Jones
STEVE C. JONES
UNITED STATES DISTRICT JUDGE

---

[5] Defendants, in fact, claim that they have never arbitrated a consumer NFI claim, and thus have no information regarding the "prohibitive cost" of such arbitration.  (Defs. Resp. [Doc. No. 30] 15 n.6.)